# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,     )
     )
     )
   v.     )   ID. No. 2006006269
     )
     )
RAQUAN WOMACK,     )
     )
   Defendant.     )

Submitted: June 26, 2025
Decided: September 30, 2025

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE SUMMARILY DISMISSED

Corinne M. Cichowicz, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Joseph Leager, Esquire, trial counsel for Raquan Womack.

Kimberly Price, Esquire, postconviction counsel for Raquan Womack.

**O'CONNOR,** Commissioner.

This 30th day of September, 2025, upon consideration of Defendant's *pro se* Motion for Postconviction Relief;[1] Defendant's Amended Motion for Postconviction Relief,[2] trial counsel's Affidavit;[3] the State's Response to the Amended Motion for Postconviction Relief;[4] and Postconviction Counsel's Reply to Trial Counsel's Affidavit and the State's Response to the Amended Motion for Postconviction Relief;[5] and the record in this matter, the following is my Report and Recommendation.

## I.    PROCEDURAL BACKGROUND

On June 15, 2020, officers from the New Castle County Police Department ("NCCPD") arrested Raquan Womack ("Defendant" or "Womack") for Possession of a Deadly Weapon by a Person Prohibited ("PDWBPP"); Possession of Firearm Ammunition by a Person Prohibited ("PFABPP"); Carrying a Concealed Deadly Weapon ("CCDW"); Tampering with Physical Evidence; Resisting Arrest; and Possession of Marijuana.[6] On September 8, 2020, a New Castle County Grand Jury indicted Defendant.[7]

---

[1]  Docket Item ("D.I.") 47.
[2]  D.I. 57.
[3]  D.I. 60.
[4]  D.I. 63.
[5]  D.I. 65.
[6]  Adult Complaint and Warrant, *State v. Raquan Womack*, Case No. 2006006269.
[7]  D.I. 1.  The State did not indict the Defendant for Tampering with Physical Evidence.

A three-day trial commenced on September 28, 2021, but before trial began, trial counsel filed two motions: a Motion to File Out of Time and a Motion to Suppress Evidence.[8]  This Court granted the Motion to File Out of Time and heard the Motion to Suppress on September 28, 2021, after completing jury selection.[9]

This Court denied Defendant's Motion to Suppress and the case proceeded to trial.  On September 30, 2021, a jury found Defendant guilty of PDWBPP, PFABPP, CCDW and Resisting Arrest.[10]  On June 3, 2022, this Court sentenced Defendant to an aggregate term of imprisonment of twenty years Level V, suspended after serving five years Level V, followed by probation supervision.  On June 30, 2022, Defendant filed a Notice of Appeal to the Delaware Supreme Court ("Supreme Court").[11]  On direct appeal, Defendant claimed "the trial court erred in denying the Motion to Suppress because his detention continued beyond the scope of the justification for the initial stop, was not based on any individualized suspicion, and was improperly continued during an investigatory search of the vehicle resulting from the odor of marijuana emanating from [the driver of the vehicle]."[12]  On April 24, 2023, the Supreme Court affirmed this Court's denial of Defendant's Motion to Suppress.[13]

---

[8]  D.I. 18.  This Court granted trial counsel's request to file the Motion to Suppress out of time and heard the motion on September 28, 2021, prior to trial.
[9]  D.I. 39, 15:21 – 18:6; 26:23 – 84:6 (Motion to Suppress).
[10]  D.I. 24.  The State dismissed the Possession of Marijuana charge.
[11]  D.I. 32.
[12]  *Womack v. State*, 296 A.3d 882, 888-89 (Del. 2023).
[13]  *Id.* at 894.

On May 25, 2023, Defendant filed a *pro se* Motion for Postconviction Relief,[14] and on July 23, 2023, this Court directed that counsel be appointed to represent Defendant in his postconviction proceeding.[15] Kimberly Price, Esquire, was appointed postconviction counsel for Defendant, and on December 6, 2024, Ms. Price filed an Amended Motion for Postconviction Relief ("Amended Motion").[16] In the Amended Motion, postconviction counsel raised two ineffective assistance of counsel claims. First, she argued trial counsel's failure to sever the PDWBPP and PFABPP offenses from the remaining charges constituted ineffective assistance of counsel.[17] Second, Ms. Price claimed trial counsel violated Defendant's constitutional rights by pleading him guilty to the resisting arrest charge in closing argument.[18] These claims are addressed *infra*.

## II.    FACTUAL BACKGROUND

The Supreme Court, in its opinion affirming Defendant's direct appeal, found the following record facts:

> On the evening of June 15, 2020, officers from the New Castle County Police Department performed a traffic stop in Wilmington, Delaware. The vehicle in question "had an unknown vehicle part dragging from the undercarriage of the vehicle and it was dragging and it was grinding on the pavement." Dellinel Jimenez ("Jimenez") and Womack were inside the vehicle, and "both were smoking cigarettes." After identifying both men, Officer Drew Hunt ("Officer

---

[14] D.I. 47.
[15] D.I. 49.
[16] D.I. 57.
[17] *Id.*, p. 13.
[18] *Id.*, p. 18.

4

Hunt") asked Jimenez, the driver, to step out of the vehicle. Officer Hunt learned that Jimenez had a few capiases for his arrest. According to Officer Hunt, Jimenez "appeared nervous" and had "really glassy" eyes and had an odor of "marijuana on his person." Womack, by contrast, did not smell of marijuana.

Officer Hunt then arrested Jimenez, who was placed in handcuffs and into a police cruiser. Meanwhile, another officer, Officer Webb, asked Womack to step out of the vehicle due to "officer safety." At this point, Womack was detained. According to Officer Hunt, Womack "was not free to go, but he was not arrested at that point." Officer Webb informed Womack that he would be free to go in a few minutes, once the officers determined whether Womack could take Jimenez's car following Jimenez's arrest. During this conversation, Womack was permitted to reenter the vehicle. Officer Hunt testified that he "preferred [Womack] stayed out of the vehicle, but Officer Webb told him he could have a seat back in the vehicle."

Because of the odor of marijuana coming from Jimenez, Officer Webb conducted a search of the vehicle. Womack was asked for a second time to step out of the vehicle as the search commenced, and this time Womack stood with Officer Canaan about five to ten feet away from the vehicle. Womack, again, was detained, but this time, he had with him a white Michael Kors backpack on his back. Roughly 30 seconds into his search of the vehicle, Officer Webb "found approximately two and a half grams of marijuana near the driver's seat of the vehicle."

Officer Webb informed Officer Canaan — who was standing outside the vehicle with Womack — that he found marijuana. Officer Canaan then attempted to place Womack in handcuffs, but Womack "pulled away [and] ran on foot." A chase ensued, lasting two minutes until the officers apprehended Womack and took him into custody. When he first fled, Womack had the white backpack with him, but by the time he was apprehended, he no longer had it. Officer Hunt estimated that the entire encounter, "from the beginning of this traffic stop until Mr. Womack ran," was "probably fifteen minutes."

The NCCPD officers recovered the backpack and searched it, finding "a loaded .38 Special Smith & Wesson revolver[,] a pay stub belonging to Raquan Womack, [and] credit and debit cards belonging

5

to Raquan Womack." Once the officers apprehended Womack, they arrested him. Officer Hunt testified that Womack was arrested "after the foot pursuit when he was on the ground[.]" At no point during the traffic stop did any NCCPD officer conduct a pat down of Womack.[19]

## III. **DISCUSSION**

### A. MOTION FOR POSTCONVICTION RELIEF.

Superior Court Criminal Rule ("Rule") 61 provides an individual with a limited opportunity to seek postconviction relief.[20] The purpose of postconviction relief is "to correct errors in the trial process, not to allow defendants unlimited opportunities to relitigate their convictions."[21] Before considering the merits of any postconviction relief motion, this Court must first apply Rule 61's procedural bars. A motion for postconviction relief can be procedurally barred as untimely filed, repetitive, formerly adjudicated, or procedurally defaulted.[22] The bars to relief also do not apply to claims which are raised after a trial resulting in a conviction where (a) this Court lacked jurisdiction, or (b) it is pled with particularity that new evidence exists which creates a strong inference of actual innocence.[23]

---

[19] *Womack*, 296 A.3d at 885-87.
[20] *State v. Washington*, 2021 WL 5232259, at *4 (Del. Super. Ct. Nov. 9, 2021), *aff'd, Washington v. State*, 275 A.3d 1258 (Del. 2022).
[21] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013).
[22] *Washington*, 2021 WL 5232259, at *4.
[23] Super. Ct. Crim. R. 61(d)(2).

6

**a. Procedural Bars**

In the context of this postconviction motion, the procedural bars are inapplicable. This is Defendant's first postconviction motion and it was timely filed.[24] Therefore, the procedural bars of Rule 61(i)(1) and (i)(2) do not apply.

Rule 61(i)(3) prohibits the filing of "any ground for relief not asserted in the proceedings leading to the judgment of conviction . . . unless the movant shows (A) cause for relief from the procedural default, or (B) prejudice from a violation of the movant's rights."[25] But this bar is inapplicable to Defendant's Amended Motion because it only asserts ineffective assistance of counsel claims. As the Supreme Court has consistently held, "[i]neffective assistance claims are not subject to Rule 61(i)(3)'s bar because they cannot be asserted in the proceedings leading to the judgment of conviction under the Superior Court's rules and this Court's precedent."[26]

Rule 61(i)(4) precludes the filing of previously adjudicated postconviction claims. This rule does not apply to this proceeding as neither of Defendant's claims were previously adjudicated.

---

[24] A motion for postconviction relief may not be filed more than one year after the judgment of conviction is final. *See* Super. Ct. Crim. R. 61(m). On June 3, 2022 this Court sentenced Defendant (D.I. 28), and on May 22, 2023 the Prothonotary received Defendant's timely *pro se* Motion for Postconviction Relief. *See* D.I. 47. And, as this is Defendant's first postconviction motion, Rule 61(i)(2)'s procedural bar is inapplicable.

[25] Super. Ct. Crim. R. 61(i)(3).

[26] *Green v. State*, 238 A.3d 160, 175 (Del. 2000).

Finally, Rule 61(i)(5) allows a Defendant to avoid the application of the aforementioned procedural bars where a defendant claims this Court lacked jurisdiction, or to a claim that satisfies the pleading requirements of Rule 61(d)(2)(i) or (ii).[27] Neither situation applies to Defendant's Amended Motion.

### b. Consideration of Defendant's claims.

Defendant asserts that trial counsel provided ineffective representation. In order to prevail on an ineffective assistance of counsel claim, a defendant must show: (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[28] "The standard for judging counsel's representation is a most deferential one,"[29] and there is a strong presumption that counsel's legal representation was competent and falls within the "wide range" of reasonable professional assistance.[30]

The question for this Court is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.[31] As such, mere allegations of ineffective assistance are insufficient. A defendant must make concrete allegations

---

[27] Super. Ct. Crim. R. 61(i)(5).
[28] *Strickland v. Washington*, 466 U.S. 668, 694 (1984).
[29] *Premo v. Moore,* 562 U.S. 115, 122 (2011).
[30] *Id. at* 122-23; *see also Flamer v. State*, 585 A.2d 736, 753-44 (Del. 1990) (citations omitted).
[31] *Id.* (*citing Strickland*, 466 U.S. at 690).

of ineffective assistance, and substantiate them, or risk summary dismissal.[32]

Deference is given to defense counsel's judgment to promote stability in the process.[33]

To overcome the strong presumption that trial counsel provided competent representation, a defendant must demonstrate that "counsel failed to act reasonabl[y] considering all the circumstances" and that the alleged unreasonable performance prejudiced the defense.[34]  The essential question is whether counsel made mistakes so crucial that they were not functioning at the level guaranteed by the Sixth Amendment, thereby depriving defendant of a fair trial.[35]

Because a defendant must prove both parts of an ineffectiveness claim, this Court may dispose of a claim by first determining that the defendant cannot establish prejudice.[36]  The first consideration in the "prejudice" analysis "requires more than a showing of theoretical possibility that the outcome was affected."[37]  "It is not enough to 'show that the errors had some conceivable effect on the outcome of the proceeding.'"[38]  Defendant must show a reasonable probability of a different result

---

[32] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).
[33] *State v. Fithian,* 2016 WL 3131442 at * 3 (Del. Super. Ct. May 25, 2016) (citing *Premo*, 562 U.S. at 120-22).
[34] *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (*quoting Strickland*, 466 U.S. at 688).
[35] *Id.*
[36] *Strickland,* 466 U.S. at 697.
[37] *Frey v. Fulcomer*, 974 F.2d 348, 358 (3rd Cir. 1992).
[38] *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (*quoting Strickland*, 466 U.S. at 693).

(*i.e.*, acquittal) but for trial counsel's alleged errors.[39]  Applying these principles, Defendant's claims are addressed below.

1. **Trial Counsel's Failure to Sever the Person PDWBPP/PFABPP Offenses from the Other Charges Constituted Deficient Performance that Prejudiced Defendant.**

Defendant contends that trial counsel's decision not to sever the person prohibited offenses from the remining indicted charges constitutes ineffective assistance of counsel.[40]  Specifically, Defendant argues "counsel rendered deficient performance when he failed to move to sever the person prohibited charges from the CCDW and Resisting Arrest charges.  Instead, the jury was left to consider [Defendant's] guilt or innocence on all of the charges after hearing he was a person prohibited from possessing a firearm." [41]  Defendant asserts "joinder of the person prohibited offenses was sufficiently prejudicial[] that it was objectively unreasonable for trial counsel not to move for severance."[42]  Additionally, Defendant asserts he suffered prejudice as a result of the jury hearing the stipulation, because the jurors were left "free to speculate how he became a person prohibited and allow the jury to draw the impermissible conclusion that [Defendant] was a person of bad character with a general criminal disposition," implicating Defendant's "right to a

---

[39] *Strickland*, 466 U.S. at 695.
[40] D.I. 57, p. 13-18.
[41] *Id.*, p. 16.
[42] *Id.*

10

fair trial before an impartial jury."[43]  Finally, because the jury asked two questions during deliberations regarding the police officers' search of Defendant's backpack, those inquiries suggest, at least to postconviction counsel, that the jury was focused on Defendant's status as a prohibited person when it submitted the questions to this Court during deliberations.  Accordingly, "there is a reasonable probability the outcome of the trial would have been different."[44]  Defendant concludes that if the CCDW and Resisting Arrest charges were "tried separately, the jury would not have known he was a person prohibited or drawn the impermissible conclusion that he was a person of bad character."[45]

On May 13, 2025, the State filed its Response to Defendant's Amended Motion.[46]  The State contends Defendant cannot establish trial counsel was ineffective and he cannot demonstrate prejudice.[47]  The State argues consenting to an agreed-upon stipulation and sanitizing the Indictment, instead of seeking severance of the person prohibited charges, was a reasonable strategic choice.[48]  Relying on *Dale v. State,*[49] the State asserts stipulations are a reasonable alternative to severance, and Defendant has failed to demonstrate the joinder of offenses in the

---

[43] *Id.*, p. 16.
[44] *Id.*
[45] *Id.*, p. 17.
[46] D.I. 63.
[47] D.I. 63, ¶ 19.
[48] *Id.*, ¶ 23.
[49] *Dale v. State*, 2017 WL 443705 (Del. 2017).

Indictment was "sufficiently prejudicial that it was objectively unreasonable for defense counsel not to move for severance."[50] Finally, the State argues Defendant's claims of prejudice are hypothetical and unsupported by the record.[51] Thus, the State contends, Defendant cannot establish prejudice.[52]

On February 4, 2025, trial counsel submitted an Affidavit to this Court, asserting that entering a stipulation constituted a strategic choice reserved for counsel.[53] He also claimed "[a] narrow stipulation of fact and use of a 'sanitized' indictment defense strategy was agreed to by Mr. Womack and demonstrated by his execution of the Stipulation regarding his prohibited status."[54] With the positions of the parties explained, Defendant's postconviction claim will be addressed below.

While it may be true, as Defendant suggests, that it is a common custom in this Court that defense counsel routinely seeks to sever person prohibited charges

---

[50] D.I. 63, paragraph 29.

[51] *Id.*, ¶¶ 30-31.

[52] *Id.*, ¶ 33.

[53] D.I. 60, p. 2.

[54] *Id.* On June 26, 2025, postconviction counsel filed her Reply to Trial Counsel's Affidavit and State's Response to Amended Motion for Postconviction Relief. D.I. 65. Postconviction counsel disagreed with trial counsel's Affidavit that there was no logical way to try the person prohibited offenses from the CCDW and resisting arrest offense. She then described the process how the Court would separate the case/Indictment into "A" and "B" cases, and how that procedure was available to trial counsel. D.I. 65, p. 2-3. Postconviction counsel also asserted the State's reliance on *Monceaux v. State*, 51 A.3d 474 (Del. 2012) and *State v. Reese*, 2019 WL 1897459 (Del. Super. Ct. Apr. 12, 2019) were inapplicable as in those cases "the Court bifurcated the charges." D.I. 60, p. 3. And, as to the State's reliance on *State v. Williams*, 2007 WL 2473428 (Del. Aug. 29, 2007), postconviction counsel argued *Williams* supported Defendant's position, because the "*Williams* Court noted that proof of the person prohibited offense requires the State to present evidence of the Defendant's prior criminal history." D.I. 65, p. 4.

from remaining offenses to avoid the prejudicial impact of a prior felony conviction, severance is not the only procedure by which trial counsel may safely navigate potential prejudice which could arise as a result of the disclosure of a defendant's felony conviction to a jury. The Supreme Court has squarely addressed this issue, on both direct appeal and in postconviction proceedings. On numerous occasions, the Court has consistently recognized that entering a stipulation as to a defendant's person's prohibited status is an alternative to severance and constitutes a strategic choice by counsel which, if entered in accord with Delaware precedent, does not result in prejudice.

To that end, in *Johnson v. State*,[55] the Supreme Court considered a claim on direct appeal that this Court erred by not *sua sponte* severing PDWBPP charges prior to trial. In *Johnson*, the defendant was indicted for, *inter alia*, PDWBPP and Murder First Degree, and defense counsel did not seek to sever the person prohibited charges from the Murder First Degree and related charges prior to trial. At trial, the defense entered a stipulation that Johnson was a person prohibited, and he was convicted of all charges. A direct appeal followed.[56]

In *Johnson*, the Supreme Court noted that the defendant's indictment was consistent with Rule 8(a) because it included multiple offenses which were "of the

---

[55] *Johnson v. State*, 983 A.2d 902 (Del. 2009).
[56] *Id*. at 922.

same or similar character or [were] based on the same act or transaction . . . or connected together . . .."[57] And, pursuant to Rule 14, the Supreme Court recognized that severance is generally appropriate when a jury may cumulate the evidence of the various crimes charged, or use the evidence of one or more crimes to infer a general criminal disposition upon a defendant in order to find the defendant guilty of another crime or crimes.[58] But in *Johnson*, the Supreme Court concluded defense counsel "made a tactical decision to stipulate [the defendant] was prohibited from possessing a firearm" as a result of his prior conviction for Rape Fourth Degree.[59]

The Supreme Court found neither plain error nor prejudice to Johnson due to counsel's tactical decision to stipulate to Johnson's person prohibited status.[60] The Supreme Court explained: "[b]y stipulation, Johnson avoided the jury learning about the nature of his prior conviction. [And] the stipulation did not provide the reason for Johnson's prohibited status. Instead, the stipulation simply stated that the parties agreed Johnson 'was prohibited from owning or possession of a firearm.'"[61] Under these circumstances, defendant Johnson failed to demonstrate prejudice:

> Johnson has the burden to show he was prejudiced by the charges not being severed. The agreement to stipulate that Johnson was a person prohibited, without disclosing the reason, was a tactical decision by

---

[57] *Id.*

[58] *See generally* Super. Ct. Crim. R. 14.

[59] *Johnson*, 983 A.2d at 923.

[60] *Id.*

[61] *Id.* The Supreme Court noted that in *Bell v. State*, 1993 WL 169143, at *3 (Del. May 3, 1993), it rejected an identical claim that the trial court committed plain error by failing to *sua sponte* sever a PDWBPP charge.

14

defense counsel to minimize any prejudice that may have [ ] resulted from not severing the charges.[62]

Womack's stipulation was virtually identical to Johnson's, and Womack similarly cannot show prejudice due to the entry of the stipulation in lieu of severance. Defendant's speculation that the jury may have been curious about his prior criminal record is insufficient to demonstrate trial counsel acted unreasonably by entering a stipulation.

The Supreme Court also addressed the issue of severance of person prohibited charges and entry of a stipulation to a defendant's prohibited status in the context of a postconviction claim. In *Dale v. State*, the defendant argued that defense counsel's decision to stipulate he was a person prohibited allowed the jury "to speculate as to why [he] was prohibited from possessing either a firearm or ammunition and to draw the impermissible conclusion that [he] was a person of bad character with a general criminal disposition,"[63] an argument consistent with Womack's claim. The Supreme Court explained severance is neither a required or a preferred method to address the perceived prejudice which could arise when the State attempts to prove the criminal conviction element of a person prohibited charge. Accordingly, entering a stipulation is an appropriate alternative to severance. The Court's opinion provided

---

[62] *Johnson*, 983 A.2d at 923.
[63] *Dale*, 2017 WL 443705, at *2.

15

the following caution as to trying person prohibited charges with other charged offenses:

> We do caution, however, that there does not appear to be any prior case which establishes that severance is required on facts such as the ones involved here. Superior Court Criminal Rule 8(a) permits the joinder of the Person Prohibited charges with other charges because they are "based on the same act." Severance is appropriate where the defendant can show prejudice from the joinder. *Although it is true that Person Prohibited charges are frequently severed, it is also true that they are sometimes tried together with the other charged offenses.* Notwithstanding the frequency with which Person Prohibited charges are severed, *a defendant making an ineffective assistance of counsel claim must show that joinder of the offenses was sufficiently prejudicial that it was objectively unreasonable for defense counsel not to move for severance.*[64]

Applying the above analysis, Dale failed to demonstrate prejudice, and the denial of the postconviction claim was affirmed.

Additional caselaw supports the propriety of entering a stipulation as to Womack's person prohibited status. In *State v. Rosser*,[65] defendant argued trial counsel was ineffective for entering a stipulation instead of moving to sever person prohibited charges.[66] According to Rosser's trial counsel, the decision to enter a stipulation was tactical, "made to prevent the jury from discovering the nature of the defendant's prior conviction" and to "sanitize the indictment."[67] This Court agreed,

---

[64] *Id.* (emphasis added).
[65] *State v. Rosser*, 2018 WL 6432985 (Del. Super. Ct. Nov. 26, 2018).
[66] *Id.* at *4-5.
[67] *Id.* at *4.

as the record did "not support [a claim] that Rosser was prejudiced by the joinder of the offenses."[68]

In *Moody v. State*, the defendant argued trial counsel was ineffective for agreeing to a stipulation while not electing severance of a person prohibited charge.[69] Leaning into its decision in *Dale*, the Supreme Court explained:

> [I]n this case the charges were properly joined and no showing has been made that prejudice resulted which rendered it objectively unreasonable for defense counsel not to move to sever. While it was unlawful for the defendant to be in possession of a firearm because he was a person prohibited, it was also unlawful for him to carry a firearm concealed. . . . Stipulating to the prohibited status, which prevented the jury from being aware of the reason the defendant was a person prohibited, was an acceptable strategic choice.[70]

Finally, in *Brooks v. State*, the Supreme Court rejected an ineffective assistance of counsel claim based upon "failing to seek a severance of the person prohibited charge and for stipulating that [defendant] was a person prohibited."[71] In *Brooks*, the defendant's claim of prejudice was rejected because "the stipulation entered at trial was limited and did not disclose the reason why Brooks was prohibited from possessing a firearm."[72] According to the Supreme Court, the potential of substantial prejudice was significantly reduced because the jury did not see or hear any evidence of Brooks' 2008 prior conviction for second-degree

---

[68] *Id.* at *6.
[69] *Moody v. State*, 2018 WL 4676706, at *2 (Del. Sept. 24, 2018).
[70] *Id.*
[71] *Brooks v. State*, 2018 WL 5980577, at *2 (Del. Nov. 13, 2018).
[72] *Id.*, at *3.

17

robbery.[73]  In affirming the denial of Brooks' postconviction motion, the Court reasoned "trial counsel's decisions to forego a severance motion so that [the defendant] faced one trial and to stipulate [he] was a person prohibited were neither objectively unreasonable nor sufficiently prejudicial to warrant relief under Rule 61."[74]

Here, the State properly joined the offenses charged in the Indictment, and Defendant does not argue otherwise.  All charges arise from the same event on June 15, 2020.   And, to avoid prejudice, trial counsel and the State sanitized the Indictment for both person prohibited offenses, removing any reference to Defendant's May 16, 2016 Rape Fourth Degree conviction.[75]  Next, the State and Defendant agreed to a stipulation – that "the Defendant was prohibited from possessing or controlling a firearm" or "possessing or controlling ammunition" on the date in question.[76] Nothing more.  And, before the State rested its evidence, the prosecutor read the following joint stipulation into the record:

> The State of Delaware and the Defendant, Raquan Womack, by and through his attorney, hereby stipulate to the fact that the defendant was a person prohibited from possessing a firearm and ammunition for a firearm on or about the 15th day of June 2020.[77]

---

[73] *Id.*
[74] *Id.*
[75] D.I. 58, p. A16-17
[76] *Id.*, p. A330, A333.
[77] *Id.*, p. A255.

18

Before counsel presented their respective closing arguments, this Court instructed the jury as to Stipulation of Facts, explaining:

> In this case, the State and Defendant have stipulated to certain facts. A stipulation is an agreement by both sides that these facts giving rise to the stipulation require no further proof. When the parties on both sides stipulate or agree as to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence and regard that fact as true or proved.[78]

When arguing the State had met its burden of proving Defendant's guilt beyond a reasonable doubt, the prosecutor informed the jury that, as to the second element of each person prohibited offense, the State and Defendant entered into a stipulation that Womack was prohibited from purchasing, owning, possessing or controlling a firearm or ammunition for a firearm on the date of the offense.[79]

Considering the record, trial counsel's decision to sanitize the Indictment and enter a stipulation was an "acceptable strategic choice."[80] By stipulating that Defendant was a person prohibited, trial counsel avoided disclosing potentially prejudicial information as to why he held that status. In doing so, trial counsel exercised his professional judgment aimed at protecting Defendant from undue prejudice.

---

[78] *Id.*, p. A345.
[79] *Id.*, p. A282:13-18; p. A283:18 – A284:1.
[80] *See Moody*, 2018 WL 4676706, at *2.

Finally, Defendant has failed to establish prejudice – the Defendant has failed to identify any record evidence reasonably supporting an allegation that the jury questioned or speculated why Defendant was a person prohibited from possessing a firearm or ammunition for a firearm. Juries are presumed to follow the instructions of this Court, and here this Court instructed the jurors that the parties entered into a specific stipulation that they were obligated to accept as a proven fact.[81] There is no reason to believe they did not do so, and Defendant's speculative claims to the contrary have not shown that the joinder of offenses was sufficiently prejudicial that it was objectively unreasonable for trial counsel not to move for severance.[82]

---

[81] *Hamilton v. State*, 82 A.3d 723, 727 (Del. 2013).

[82] Defendant's suggestion that the jury notes submitted to this Court during deliberations are evidence that the jury was somehow influenced by Defendant's person prohibited status is unsupported by the record. The jurors asked two questions in one note: first, "[i]s there footage of the backpack being opened?" and second, "[i]s there a picture of the contents of the backpack in the bag?" D.I. 58, p. A355:14-17. Neither question touches upon Defendant's person prohibited status.

Defendant's reliance on *State v. Williams,* 2007 WL 2473428 (Del. Super. Aug. 29, 2007) is also misplaced. *Williams* was a capital murder prosecution where the defendant was charged with, among other things, possession of a deadly weapon by a person prohibited. *Id.* at *1. Prior to trial, defense counsel moved to sever the person prohibited charges from the remaining offenses, and this Court granted the motion, concluding "[g]iven the fact that proof of the charge of Possession of a Deadly Weapon by a Person Prohibited *will involve the presentation of Defendant's prior criminal record*, the jury may be unable to compartmentalize their judgment of guilt or innocence with regard to each of the separate counts in the indictment, and may infer a general criminal disposition." *Id.* There is nothing in this Court's Order in *Williams* that suggests a stipulation was addressed by the Court, the State or defense counsel during the prosecution of that case.

**2. Trial Counsel Violated Defendant's Fundamental Constitutional Rights by Pleading Him Guilty to Resisting Arrest in Closing Argument.**

Defendant argues that because trial counsel suggested to the jury that it could find him guilty of Resisting Arrest in closing argument, he "pled him guilty" to the charge, a right which Defendant argues is his alone to exercise.[83] Defendant asserts trial counsel's concession in the course of closing argument constituted a structural defect in the trial where prejudice is presumed and the Defendant is entitled to relief. According to Defendant, the *Strickland*[84] analysis that forms the bedrock of postconviction litigation is inapplicable to this claim. Defendant argues instead that, due to trial counsel's conduct, *United States v. Chronic*[85] and *Cooke v. State*[86] are the controlling applicable legal framework and authority entitling him to relief.[87]

The State contends that Womack's position is inconsistent with the record. According to the State, Defendant claims trial counsel was so ineffective in representation that he deprived Defendant of his autonomous right whether to plead guilty to a charge, because he conceded guilt to one of several pending offenses. But relying on trial counsel's Affidavit, the State credits trial counsel for discussing the "strategic value of admitting the misdemeanor charge of Resisting Arrest with Mr. Womack in order to gain credibility with the jury on the contested felony charges"

---

[83]  D.I. 57, p. 18.
[84]  *Strickland*, 466 U.S. 668.
[85]  *United States v. Chronic*, 466 U.S. 648 (1984).
[86]  *Cooke v. State*, 977 A.2d 803 (Del. 2009).
[87]  D.I. 57, at 19-20.

before trial counsel made the concession to the jury.[88]  The State notes that "Mr. Womack does not allege that he opposed trial counsel's strategy of pleading the defendant guilty during closing argument to the misdemeanor resisting arrest charge. Instead, he argues trial counsel's decision bore no strategic value and undermined Mr. Womack's decision-making ability."[89] As such, the State suggests, Defendant now inaccurately characterizes trial counsel's representation.[90]

As the State further explained, since Defendant assented to trial counsel's strategic decision to gain credibility with the jury, the Defendant did have input into trial counsel's concession, and Defendant's autonomous decision to enter a plea of guilty or not guilty was preserved.[91]  The State argues Defendant's consent to the concession is a significant fact unlike the actions of counsel in *Cooke*, where "defense counsel argued for and ultimately pursued a guilty but mentally ill defense over the defendant's express objection. . . and the Supreme Court determined Cooke's fundamental decision-making authority was undermined to the point that the prosecution's case was not subjected to meaningful adversarial testing."[92] According to the State, "[s]uch a structural defect did not occur in the instant case," because the Defendant agreed to the strategy.[93]  The State contends that a defendant,

---

[88]  D.I. 63, p. 16.
[89]  *Id.*
[90]  *Id.*
[91]  *Id.*, p. 17.
[92]  *Id.*, p. 18.
[93]  *Id.* (*citing Cooke*, 977 A.2d at 848).

as Womack is doing here, "cannot assent to a strategic decision then later claim ineffective assistance or a structural defect only after the strategy fails to produce the desired result."[94] "Admitting to a lesser offense in order to generate credibility with a jury when arguing against more serious, contested charges is a well-known trial strategy," and "merely because the strategy proved unsuccessful," Defendant now evaluates trial counsel's conduct through hindsight to critically evaluate trial counsel's strategic decision.[95] Because Defendant agreed to the concession, he can't now complain because it did not have the effect he thought it would.

Finally, trial counsel's Affidavit denies Defendant's postconviction claim, because he "discussed the strategic value of admitting the misdemeanor charge of Resisting Arrest with [the Defendant] in order to gain credibility with the jury on the contested felony charges, and Defendant consented to the concession."[96] This discussion occurred just prior to the conclusion of trial counsel's closing argument when trial counsel requested a short opportunity to speak to Womack. According to trial counsel, Womack assented to the concession of guilt on the misdemeanor

---

[94] *Id.*

[95] *Id.*, p. 20. In response to the State's Response to Amended Motion for Postconviction Relief, postconviction counsel could "discern no reasonable trial strategy for trial counsel pleading Mr. Womack guilty of resisting arrest in the manner in which it occurred here." D.I. 65, p. 7. According to postconviction counsel, if this was trial counsel's plan, it "should have been discussed with Mr. Womack prior to closing arguments, not at the very end." *Id.* Postconviction counsel reiterates that the right to plead guilty or not guilty lies solely with Mr. Womack," but she did not confirm or deny trial counsel's representation that Womack assented to this concession immediately before it was made. *Id.*

[96] D.I. 60, p. 2.

resisting arrest charge before he made the concession to the jury.[97] Trial counsel then told the jurors, as to the Resisting Arrest charge: "[t]o define this for you a little more. You can't resist even a lawful arrest, so he is guilty of that. He is guilty of that."[98]

Context is important, and here, the pre-trial court proceedings, testimony of trial witnesses and counsels' closing arguments provide context to the arguments of before this Court. When arrested, Defendant was charged with several felony offenses, the most serious being PDWBPP and CCDW, the first of which carried a minimum mandatory five-year prison sentence upon conviction. And the record reflects the State extended Defendant a plea offer to the PDWBPP charge (a Class C felony pursuant to 11 *Del. C.* § 1448(c)), with a sentence recommendation of a five-year mandatory prison sentence.[99] On August 30, 2021, Defendant rejected the State's plea offer.[100] The Resisting Arrest offense that trial counsel conceded Defendant's guilt is a misdemeanor with a sentence range of 0-1 year Level V, with a presumed probationary sentence.

---

[97] D.I. 60, p. 2.
[98] D.I. 58, A295:11-15.
[99] D.I. 58, A26.
[100] *Id.* A Class C felony has a sentence range of 0-15 years, and because Defendant has a prior violent felony conviction on his criminal record, he was subject to a five-year mandatory sentence. *See* 11 *Del. C.* § 4205(b)(3). CCDW (firearm) is a Class D felony (11 *Del. C.* § 1442(b)), having a sentence range of 0-8 years. *See* 11 *Del. C.* § 4205(b)(4).

A review of trial counsel's closing argument suggests that his focus was on the two serious felony firearm offenses which, if convicted, exposed Defendant to significant prison sentences. Trial counsel's closing argument focused the jury on what he believed the relevant question was before them – "what this case comes down to is did Mr. Womack know if the gun was in the bag? Did he know the gun was in the bag?"[101] In orienting the jury to this question, trial counsel refined his closing argument on the State's obligation to prove Defendant's knowing and/or intentional conduct related to the firearm charges that carried significant potential incarceration, and in the case of the PDWBPP charge, a mandatory prison sentence.[102] Trial counsel pointed out on more than one occasion that the State did not provide evidence of Womack's DNA or fingerprints on the recovered handgun or ammunition, and trial counsel repeatedly circled back to the absence of DNA and fingerprints on the handgun during the closing argument.[103]

The record reflects that through cross-examination of the State's witnesses and in closing argument, trial counsel subjected the State's evidence of Defendant's most serious felony offenses to meaningful adversarial testing, and Defendant does not claim otherwise. Defendant's postconviction *Chronic/Cooke* claim only focuses on the misdemeanor Resisting Arrest charge. And, as to that offense, the State

---

[101] D.I. 58, A287:6-8; A293:19 – A294:8.
[102] *Id.*, p. A287:9-17.
[103] *Id.*, p. A290:1—16; A291:21 – A292:7.

entered into evidence videotaped bodycam recordings of Defendant's flight from the NCCPD officers.[104] That is to say, the evidence presented at trial of Defendant's act of resisting arrest was compelling and generally defenseless. Finally, trial counsel's concession to the jury that a person "can't resist even an unlawful arrest"[105] was a correct statement of the law and was consistent with this Court's jury instruction on that charge.[106]

Defendant argues that "pleading him guilty" to resisting arrest should not be analyzed under the standards and analysis set forth in *Strickland*, but constitutes a "structural defect" requiring this Court to apply the analysis set forth in *Chronic/Cooke*. This Court disagrees. In *State v. Coleman*,[107] (a case where postconviction counsel's firm represented a defendant in a recent postconviction claim asserting the same argument rejected by this Court), postconviction counsel argued Coleman's trial counsel "invited" the jury to find Coleman guilty of Resisting Arrest, as counsel "did not dispute that [defendant] was fleeing from the police officers."[108] Trial counsel also conceded Coleman's guilt as to a possession

---

[104] *See generally*, Testimony of NCCPD officer Kyle Webb and body worn camera footage of Defendant's flight from police, D.I. 58, A177:9 – A186:4.

[105] *Id.*, p. A295:12-14.

[106] This Court's instruction provided, in part, that "the law gives no right to resist an arrest by a police officer whether or not the arrest was lawful." *Id.*, p. A338.

[107] *State v. Coleman*, 2024 WL 3413459 (Del. Super. Ct. July 15, 2024).

[108] *Id.* at *3.

of heroin charge,[109] but argued the State's evidence failed to prove defendant's guilt on a Carrying a Concealed Deadly Weapon charge.[110] And here, Defendant makes the same essential legal argument – that *Strickland* is not the proper paradigm to analyze the conduct of trial counsel, and instead this Court should apply the *Chronic/Cooke* test, where prejudice is presumed.

However, this Court rejected Coleman's argument that *Strickland* was not the appropriate postconviction analysis:

> [I]t is unquestionable that trial attorneys are allowed to use the strategy employed here by Trial Counsel and does not necessarily implicate *Chronic/Cooke*. *Chronic/Cooke* applies in instances where an attorney has completely gone against the wishes of their client and plead him **guilty** during trial on *every* charge. While perhaps trial counsel's strategy was fruitless, in reviewing these claims, the Court must "avoid peering through the lens of hindsight. While Coleman may be unhappy with the result or Trial Counsel's defense of him, the implementation of a strategy to concede to certain charges does not wholistically deprive Coleman of any adversarial testing.[111]

Here, as in *Coleman*, defense counsel did not concede Defendant's guilt on every charged offense, and the *Chronic/Cooke* paradigm was inapplicable. In Coleman's direct appeal, the Supreme Court affirmed this Court's judgment.[112]

---

[109]  Just after conceding guilt as to the Resisting Arrest charge, defense counsel told the jury: "[a]nd while I'm at it, find him guilty of the heroin charge as well." *Id.*

[110]  *Id.*

[111]  *Id.*, at *7-8.

[112]  *See Coleman v. State*, 2025 WL 1428177, at *1 (Del. May 19, 2025) (Explaining "Coleman has not persuaded us that his counsel's decision occasioned "a complete breakdown of the adversarial system." We thus agree with the Superior Court's conclusion that counsel's decision fell "within the purview of *Strickland*" and that consequently Coleman was required to show prejudice. And for the reasons stated in the Superior Court's July 15, 2024 Memorandum Opinion

Having concluded, consistent with *Coleman*, that the appropriate analysis to consider Defendant's postconviction claim is *Strickland*, Defendant must demonstrate that trial counsel's representation fell below an objective standard of reasonableness. Based on the record, he does not. Trial counsel's strategy in conceding Defendant's guilt to Resisting Arrest in closing argument was reasonable. While trial counsel conceded guilt on the misdemeanor charge, he aggressively argued that the State could not prove Defendant guilty of the felony firearm offenses which carried significant mandatory and discretionary jail sentences. The rationale for conceding guilt on the Resisting Arrest offense – attempting to garner credibility with the jurors – was reasonable when considering the recorded body cam video evidence which captured Defendant's flight from the police and was admitted into the record. Conceding guilt on the Resisting Arrest charge was a reasonable strategic decision to attempt to gain credibility with the jury.[113]

Even if this Court were to conclude that Defendant established counsel's representation fell below an objective standard of reasonableness, Defendant cannot demonstrate prejudice – that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. It is

and Order, we are satisfied that it is not reasonably probable that, had Coleman's counsel followed Coleman's preferred strategy, the result of his trial would have been different. Put differently, Coleman did not suffer prejudice within the meaning of *Strickland*.")

[113] To the extent the record suggests Defendant consented to the concession of guilt during closing argument, the record suggests that is the case, but even if it were not the case, it would not change the result.

more likely than not that a rational jury would have still found Defendant guilty of the Resisting Arrest charge. The videorecorded evidence of Defendant's flight from the police is compelling evidence which eliminates any credible assertion of prejudice that resulted from trial counsel's concession of guilt on the Resisting Arrest charge.

## CONCLUSION

For all the aforestated reasons, I recommend Defendant's Motion for Postconviction Relief be **SUMMARILY DISMISSED.**

**IT IS SO RECOMMENDED.**

/s/ Martin B. O'Connor
Commissioner

oc: Prothonotary
Raquan Womack